**Donald Lee HALE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 26318.

United States Court of Appeals
Fifth Circuit.
April 15, 1969.

H. H. Gearinger, Gearinger & Vineyard, Chattanooga, Tenn., for appellant.

Charles L. Goodson, U. S. Atty., F. D. Hand, Jr., Asst. U. S. Atty., Atlanta, Ga., for appellee.

Before GEWIN and GODBOLD, Circuit Judges, and CHOATE, District Judge.

GEWIN, Circuit Judge:

This appeal presents for review the judgment of conviction of Donald Lee Hale who was tried before a jury in the United States District Court for the Northern District of Georgia under an indictment charging him with violation of the Dyer Act.[1] We affirm.

1. The appellant was convicted on a count charging a violation of 18 U.S.C. § 2313 (1964) which provides:

Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both. A count charging the appellant with violating 18 U.S.C. § 2312 (1964), which proscribes transporting a motor vehicle

■■ The principal contention urged by the appellant is that the trial court erred in denying his motion for a directed verdict of acquittal. In reviewing the propriety of the trial court's denial, we must examine the evidence, taking the view of it most favorable to the Government, and determine whether a jury might reasonably accept the relevant evidence as adequate to support a conclusion of the appellant's guilt beyond a reasonable doubt.[2] Moreover, since this is a circumstantial evidence case, the inferences reasonably to be drawn from the evidence must not only be consistent with guilt but also inconsistent with every reasonable hypothesis of innocence.[3]

The Government presented evidence of the following facts. Several hours before dawn on the morning of July 29, 1967, appellant Hale was called to the scene of an automobile accident in which his wife and children were involved. The accident occurred in Rossville, Georgia, when the late-model Chevrolet automobile driven by the appellant's wife collided with an approaching car. Following the appellant's arrival at the scene, he confronted the driver of the other car and proclaimed: "You hit *my* car head-on and hurt my family, I'm going to whip you."[4] Officer Dunn, a policeman investigating the accident, testified: "I separated them, and made them go, each on his way, and he [the appellant] asked me if it would be all right for Dobbins Wrecker to pull his car . . . ."

During this on-the-scene investigation, Officer Dunn was unaware that the Chevrolet automobile driven by the appellant's wife was stolen, but shortly thereafter he received information which prompted him to have the car pulled to the police station and held for additional investigation. Careful examination of the vehicle revealed that the plate containing the car's public serial number had been pried off the doorpost and that the motor number had been welded over. Unobscured, however, was the manufacturer's identification number, which matched, as did the automobile's general description, that of a car stolen in Chattanooga, Tennessee on January 10, 1967.[5]

Two days after the accident, Officer Patrick, a policeman on duty at the Rossville police station, received a telephone call from a person identifying himself as "Don Hale." The caller inquired why *his* car was still being held by police. The following day—three days after the accident—an FBI agent called upon the appellant, informed him of his rights, and sought to question him about the car. Appellant Hale responded that the car was not his, that he had never seen it previous to the accident, that he did not know where his wife got it or why she had it, and that he did not wish to discuss the matter further. Neither the appellant nor his wife testified at the trial. The defense presented one witness, who testified to the appellant's good character.

■ It is well established that *unexplained possession of recently stolen*

---

in interstate commerce knowing it to have been stolen, was dismissed by the trial court upon a motion by the Government before submission of the case to the jury.

2. Montoya v. United States, 402 F.2d 847, 850 (5th Cir. 1968); Weaver v. United States, 374 F.2d 878, 881 (5th Cir. 1967); Curtis v. United States, 297 F.2d 639, 640–641 (5th Cir. 1961).

3. Montoya v. United States, 402 F.2d 847, 850 (5th Cir. 1968); Duncan v. United States, 357 F.2d 195, 196–197 (5th Cir. 1966); Curtis v. United States, 297 F.2d 639, 641 (5th Cir. 1961); Vick

v. United States, 216 F.2d 228, 232 (5th Cir. 1954).

4. The witness stated that if the quoted words were not actually used, Hale used words to the same effect. The witness was positive that Hale referred to the vehicle as "my car." (Emphasis added.)

5. The original license plate had been replaced by one registered to Charles Ladd. No evidence was presented identifying Ladd or explaining his registration of the car. The Government's brief states that the FBI was unable to locate Ladd.

**150**

*property* permits a jury to infer that the possessor has knowledge that the property is stolen.[6] The appellant contends, however, that the sufficiency of the evidence against him must be determined unaided by this inference because the Government failed to prove that he was at any time in possession of the stolen automobile. Furthermore, he asserts that even if the evidence sustains a finding that he was in possession at the scene of the accident, the unexplained possession rule is, nevertheless, inapplicable because the automobile at that time was not *recently* stolen, the theft having occurred over six months prior to the accident.

The inference allowed by unexplained possession is a powerful one. It is a substitute for direct proof of guilty knowledge and courts, both trial and appellate, should proceed with extreme care in determining whether the evidence sufficiently establishes a basis for the inference. Cautious vigilance must be maintained against the employment of a naked legal principle in a factual setting which provides no reasonable basis for the principle's application.[7] On the other hand, the jury must not be *unduly* inhibited in its search for truth; it must be permitted to draw *fair* and *reasonable* inferences from creditable evidence.

The trial court charged the jury that a person who knowingly has the power and intention at a given time to exercise dominion or control over an object, although not in actual possession of it, is in constructive possession. This charge was proper and we believe that the evidence was sufficient to support a finding of constructive possession as defined.[8] The appellant's arrival at the scene of the accident was accompanied by implied claims of ownership, a threat of reprisal for the damage caused to *his* property, and an expression of concern about the removal of the wrecked vehicle. This conduct, in conjunction with a subsequent telephone inquiry—by a person who identified himself as "Don Hale"—as to why the police were holding *his* car, provided the jury with ample evidence to justify a conclusion that the appellant was in constructive possession of the automobile at the scene of the accident.[9]

The appellant urges, however, that guilty knowledge cannot be inferred from *constructive* possession. He relies upon United States v. Russo,[10] in which the Third Circuit refused to permit an inference of guilty knowledge from constructive possession. The Third Circuit's holding, however, was based on facts patently different from the ones with which we deal. Russo owned a truck which contained a quantity of stolen cigarettes. The jury's finding that Russo was in possession of the cigarettes rested solely upon his ownership of the truck. The court held, on appeal, that such constructive possession, without other evidence, could not support a finding that Russo knew that the cigarettes had been stolen.

---

6. *See* Overton v. United States, 405 F.2d 168 (5th Cir. 1968); Beufve v. United States, 374 F.2d 123, 125 (5th Cir.), *cert. denied*, 389 U.S. 881, 88 S.Ct. 122, 19 L.Ed. 175 (1967); Broom v. United States, 342 F.2d 419 (5th Cir. 1965); Barnes v. United States, 341 F.2d 189, 191 (5th Cir. 1965); Herman v. United States, 289 F.2d 362, 367 (5th Cir. 1961); Barfield v. United States, 229 F.2d 936, 939 (5th Cir. 1956); Yielding v. United States, 173 F.2d 46, 48 (5th Cir. 1949); Janow v. United States, 141 F.2d 1017, 1018 (5th Cir. 1944); Levi v. United States, 71 F.2d 353, 354 (5th Cir. 1934). *See also* McNamara v. Henkel, 226 U.S. 520, 524–525, 33 S.Ct. 146, 57 L.Ed. 230 (1913); Dunlop v. United States, 165 U.S. 486, 502, 17 S.Ct. 375, 41 L.Ed. 799 (1897); Wilson v. United States, 162 U.S. 613, 619–620, 16 S.Ct. 895, 40 L.Ed. 1090 (1896).

7. *See* Barfield v. United States, 229 F.2d 936, 944 (5th Cir. 1956) (concurring opinion).

8. *See* Juvera v. United States, 378 F.2d 433, 437 (9th Cir. 1967); Barnes v. United States, 341 F.2d 189, 192 n. 5 (5th Cir. 1965); Arellanes v. United States, 302 F.2d 603, 608 n. 8 (9th Cir. 1962).

9. *See* Espinoza v. United States, 317 F.2d 275, 276 (9th Cir. 1963).

10. 123 F.2d 420 (3d Cir. 1941).

By contrast, the inference in the case *sub judice* rests upon appellant Hale's claimed ownership and intent to exercise control over the stolen product itself. Our concern is not with labels—actual or constructive—but with whether there existed such a possessory relationship as would

> give rational assurance to the feeling that in the abundant experience of mankind, the conclusion sought to be implied has the intrinsic mark of probability and reasonably convincing weight.[11]

While the lack of actual possession may weaken an inference of guilty knowledge, it does not necessarily eliminate the basis for the inference.[12]

 The appellant's alternative contention is that his possession at the scene of the accident was not *recent* since the theft occurred over six months before the accident. What constitutes *recent* possession is not capable of exact or precise definition; it varies with the circumstances of each case and, for these reasons, it is often said that the question is one of fact for the jury.[13] We agree with these principles. However, it is incumbent upon the trial court to determine whether there exists sufficient evidence to support a finding of recentness by the jury. "There is a certain period after which . . . it [is] very unfair to assume theft from mere possession . . . .," wrote Judges Pollock and Coleridge.[14] There is likewise a certain period after which an inference of *guilty knowledge* cannot be rationally inferred from unexplained possession. Whether this period has expired is a question for the trial court to determine before giving the case to the jury. In reaching its determination, the trial court need not be oblivious to other evidence pointing to the accused's guilt; to the contrary, it is free to judge the reasonableness of the inference in the context of all the evidence.[15] Approaching the case *sub judice* in this manner, we conclude that the trial court did not err in allowing the jury to infer guilty knowledge from the appellant's unexplained possession of the automobile. To be sure, the lapse of six months and nineteen days substantially weakened the inference of guilty knowledge, but when the appellant's unexplained possession is analyzed in the context of a factual setting as fraught with suspicion as the one in this case, the inference is strengthened and doubt as to its reasonableness fades. Accordingly, we hold that the evidence against the appellant fairly included the inference to be drawn from unexplained possession of recently stolen property, and that the appellant's motion for a directed verdict of acquittal was properly denied.

 The foregoing discussion presupposes that admissions into evidence were proper. The appellant contends, however, that the contents of the telephone call received by Officer Patrick

11. Barfield v. United States, 229 F.2d 936, 942 (5th Cir. 1956) (concurring opinion).

12. United States v. Casalinuovo, 350 F.2d 207, 211 (2d Cir. 1965); United States v. De Sisto, 329 F.2d 929, 935 (2d Cir. 1964). *See* Espinoza v. United States, 317 F.2d 275, 276 (9th Cir. 1963); Hernandez v. United States, 300 F.2d 114, 116–119 (9th Cir. 1962).

13. United States v. Allegrucci, 299 F.2d 811, 815 n. 4 (3d Cir. 1962); Chambliss v. United States, 218 F. 154, 158 (8th Cir. 1914); *see* Lee v. United States, 363 F.2d 469, 474–475 (8th Cir. 1966);

Christensen v. United States, 104 U.S. App.D.C. 35, 259 F.2d 192, 193 (1958); United States v. Di Carlo, 64 F.2d 15, 16–17 (2d Cir. 1933); Boehm v. United States, 271 F. 454, 457 (2d Cir. 1921).

14. 9 Wigmore on Evidence § 2513, at 422 n. 4 (3d ed.1940).

15. *See* Boehm v. United States, 271 F. 454, 457 (2d Cir. 1921); Lee v. United States, 363 F.2d 469, 474–475 (8th Cir. 1966); (five months held sufficiently recent); Jenkins v. United States, 361 F.2d 615, 618–619 (10th Cir. 1966) (six months held sufficiently recent).

were improperly admitted because Patrick did not recognize the caller's voice as being that of the appellant.[16] This contention is without merit. Once a prima facie case of authorship is made out by the proponent of evidence, the issue of authenticity is for the jury.[17] Officer Patrick's testimony, although only circumstantial evidence of authenticity, was sufficient to take the matter to the jury.[18]

 The appellant also urges that by waiving its right to open the closing arguments to the jury, the Government waived its right to discuss the case generally and that, when it included in its final remarks discussion not limited to refuting the appellant's closing argument, error prejudicial to the appellant resulted. This contention also fails. The order and extent of the argument is entirely within the discretion of the trial court.[19]

 Additionally, the appellant assigns as error the trial court's permitting the Government to reopen its case in order to offer evidence that the theft occurred in Tennessee, a fact inadvertently omitted in the presentation of the Government's case. To permit reopening and receipt of additional testimony omitted through mere inadvertence is within the discretion of the trial court,[20] and we find no abuse of discretion in the instant case.

We have examined each of the appellant's contentions and find them all without merit. The judgment of conviction is affirmed.

---

**16.** Officer Patrick testified that he was unfamiliar with the appellant's voice.

**17.** Espinoza v. United States, 317 F.2d 275, 276 (9th Cir. 1963); Carbo v. United States, 314 F.2d 718, 743 (9th Cir. 1963).

**18.** *Ibid.*

**19.** Hardie v. United States, 22 F.2d 803 (5th Cir. 1927); United States v. El Rancho Adolphus Prods., 140 F.Supp. 645, 649–650 (N.D.Pa.1956).

**20.** Simsirdag v. United States, 315 F.2d 230, 231 (5th Cir. 1963); Reining v. United States, 167 F.2d 362, 364 (5th Cir.), *cert. denied* 335 U.S. 830, 69 S.Ct. 49, 93 L.Ed. 383 (1948).